Carlson appeal. Mr. Rhodes. Thank you, Your Honor. May it please the Court. Throughout the proceedings below, the government repeatedly acknowledged the fact that items bearing the indicia of the OMC do not belong to the individual criminal defendants. The indicia of what? The indicia of the OMC. If you would use real words, it would help us. The indicia of the Outlaws Motorcycle Club. Just call them the club. The club, Your Honor. The club. It is undisputed that these items belong to the club and not to the individual members of the club. Nonetheless, when the government sought forfeiture of these items, it took no steps whatsoever to provide specific notice of the crime, no one other than the criminal defendants. It had a significant amount of information available to it through which it could have attempted to provide notice reasonably calculated to apprise the club of the proceedings, and its failure to do so represents a violation of both the forfeiture law and due process. What property interest did the individual members have in the personal property when given? And what is retained by the club? Is it a bail or bailey relationship? A license? Or what? I mean, what? We've argued that there's an agency interest. I think the individuals at least have an interest as a possessor of the items. I don't think there's a licensee issue. Theoretically, I guess it could be seen through the bailey lens. But at the very least, the individuals have an interest as possessors of the items during the course of their membership in the club. I mean, property rights arise from state law. What state law does your collective ownership right arise from? I think the collective ownership right is simply an ownership right. We've argued that Mr. Carlson has a right to be here as the agent of the club itself. But what's the club's ownership right? They didn't buy this stuff, did they? Your Honor, I simply do not know that. I assume at some point they did, and the evidence is undisputed that Mr. Carlson oversees the distribution. That's the agency argument for Mr. Carlson being the appropriate person to assert the club's interest, but we're trying to get some framework for analyzing the club's property interest here. And if the club didn't buy this stuff, and there isn't some other evidence of ownership by the club, and that the club was the bailor and the individual club members in the Indianapolis and Fort Wayne chapters were the baileys and had to were convicted or otherwise disassociated with the club, you know, what is the nature of the club's property interest? Your Honor, the record is undisputed that the club itself owns these materials. The question is... What is the nature of that ownership interest? Your Honor, I do not know where they are purchased, where they are manufactured from. The reason I started talking about Mr. Carlson's overseeing the distribution, there is a distribution that occurs at the club level. That tells me that this is purchased at the club level and distributed to the individual chapters. So the national organization purchases all of this logo wear and other paraphernalia and distributes it to the local chapters, who in turn distribute it to their members? Your Honor, I... Or do the members go on the eBay site and buy it themselves? I am positive it's not the eBay answer. Well, it is marketed on eBay for anybody who wants to buy it, members and non-members alike. There is some evidence that some materials are sold on eBay. I think that the materials sold on eBay might not be the same materials that we're talking about here. I think it might be the difference between, I used the Green Bay Packers, between buying a t-shirt that says Green Bay Packers and actually buying a helmet that the Packers use for themselves. Okay, so this is in the nature of uniforms. I think that's a very good example, yes, Your Honor. But we don't know who purchases the uniforms and therefore owns them, and then how they came to be in the possession of the local members. On the present record, without the benefit of an evidentiary hearing... Well, right, but you've got to make some sort of prima facie showing that you've got evidence to back up the club's ownership claim, other than the bold assertion that this is some sort of collective. Your Honor, I think ownership is not necessarily, I have a receipt that says I went to Walmart today and purchased this. Well, but you've got to have something. You've got to be able to... I mean, if we were to remand this for a hearing, what kind of evidence would you submit? I think we would have evidence clearly from Mr. Carlson and other members of the outlaws. And what would they say about who bought this stuff? Your Honor, I don't know who actually purchased the patches. You should come to court equipped with that information. If you're asking us to reopen this on 60B and order the district court to hold a hearing, you have to tell us what evidence you're going to submit. Your Honor, there's no theory of ownership that says only the person who actually purchases an object... What is your theory of ownership that's supported? What's the support in Indiana law for that, that the club owns this and loaned it to the individual members through the local chapters or made them baileys of the club as the bailor or some other such relationship? Again, I think the uniform is a very good example. That's ownership by the club, no matter who... Right. But if the Green Bay Packers were here standing in your shoes, they could say, we've bought this uniform and we gave it to Aaron Rodgers to wear and he's got to give it back. Absolutely. Pursuant to our bylaws. Do you have bylaws of the outlaws organization that would contain all of these relationships? There is an incorporated element and positive bylaws exist somewhere. What we have on the present... Let me stop you for a second. Is the club a corporation, a partnership, an LLC? What is it? There is certainly an incorporated element. I think part of it is also an unincorporated association, but the bottom... Because I was trying to figure out how the club exercises this collective ownership. What we know on the present record, Your Honor, is that everyone who becomes a member of the club signs an affidavit that the government introduced into evidence saying, I understand that these materials do not belong to me. These materials belong to the club. And that's the club's property, whether or not the club went to Walmart. I think we can draw an inference from the fact that Mr. Carlson oversees the distribution of these materials that the club was the one that went to the metaphorical Walmart. But the bottom line is that we're here short of an evidentiary record precisely because the district court did not accept... But this evidence is in your hands. And so you could have made a showing in your 60B motion that would make out a case for a full-blown evidentiary hearing to put the ownership interest in play. Your Honor, there can always be more evidence. What you're asking for is... Well, wait a minute. How about some? Your Honor, there is some evidence. I'm talking about this membership affidavit that everyone signs. The government, in the indictment in this case, said that these materials do not stay with the criminal defendants when they leave the organization. These materials belong to the organization. The membership affidavit that everyone signs was twice introduced into evidence both at the criminal trial and on the 60B motion. Mr. Carlson's affidavit is undisputed on this record. The government has never disputed it. What you're asking for right now is for essentially a credibility determination to be made without the benefit of that evidentiary hearing saying that Mr. Carlson is wrong, saying that that is simply a sham. And that's precisely what this court rejected in the funds case that arose during the pendency of the briefing in this case, where this court said that, no, at the pleading stage, we cannot look toward legitimate ownership. That is a question that goes toward the end forfeiture hearing. That is a question to be resolved for the merits. Thank you, Your Honor. Thank you, Mr. Rose. Mr. Buckington. Good morning. May it please the Court. Before we even get into the thick of whether standing exists and what the ownership interests are that the outlaws might have in the properties that are seized at various locations in Indianapolis, the issue of adequate notice has to be addressed first. If the court finds that the government issued adequate notice in this case, simply put, the intervener petition filed by Mr. Carlson should be dismissed because it's not timely. And the test for adequate notice is whether the government provides notice or the government has to send notice to any person who reasonably appears to be a potential claimant withstanding. In this case, the government did more than simply post Internet notice. Everybody who is a member of the Outlaws Motorcycle Club in Indianapolis was indicted in this case. Notice of the forfeiture was provided to every member who had possession of the seized items, and they voluntarily gave the seized items up in their plea agreement. Right. Is it the government's position that that individual notice to all the members of the local chapters in Indianapolis and Fort Wayne is imputed to the national organization? Well, I think what the court has asked opposing counsel is, well, what's the structure of the outlaws? Is this a corporation? Is it a partnership? What is it? And counsel could not answer that question. For that reason, it can't be expected that the government could answer that question. This isn't a case where we have the Green Bay Packers. Very easily we could ascertain, you know, who could be served in the Green Bay Packers corporate office. But you knew the Outlaws National Headquarters was in Milwaukee. Your Honor, as the Miller trial evidence established, our belief, our understanding was it was in Florida. It may have been in Milwaukee back in 2010, 2011, when Jack Roska was the national president of the Outlaws, and he was in Milwaukee. But at the time of this indictment, the national chapter was in Florida. So we serve everybody who is a member of the Outlaws in Indianapolis, everybody who is a member of the Outlaws got this notice through the court's e-filing system, including the president of the Indianapolis chapter of the Outlaws. So there's no evidence that's been introduced that the government should have known that a gentleman in Wisconsin could step forward at some point to say, hey, I'm the guy that disperses all this property. The items weren't in his possession. He wasn't even a member of the chapter in Indianapolis. He wasn't mentioned during the Miller trial. Nobody had any knowledge of who this guy was. You know, forgive me, but according to the district court, the government conceded that the property was owned by the collective membership of the club. So what form of ownership did the government concede? We have never conceded that it's owned by the entire membership of the club. What I would concede is if you asked a member of the Outlaws who owns it, they would tell you, I think it's owned by the club. But when it comes to forfeiture and the standing issue for forfeiture, the claimant has to establish that the ownership interest that he asserts is one that's recognized by state law. And there's no case in Indiana law that I could find, or I suppose that opposing counsel would find, that says that this type of collective ownership is a recognized interest in Indiana law. I realize the Rosca case is an Eastern District of Virginia case. It doesn't bind this court in any way. It's persuasive authority only. But the Rosca court's answer to that is, no, this is not a recognized property interest. This is a sham, and this is a sham property interest that these folks have created to insulate objects of forfeiture from forfeiture proceedings. So I would agree that if you asked a member of the Outlaws, they'd say, oh, this is our collective ownership. Right, and they would have said that before all of these investigations, right? I assume so. So does that mean we need to serve every member of the club? Well, I don't know. That's what this proceeding is going to determine. But I think we're all struggling with the nature of the asserted property interest here. I mean, you would concede, I think, that some other organizational association that pools its resources and purchases property and then authorizes its individual members to possess that property, whether pursuant to a formal bailment or loan or otherwise, would have a legally cognizable interest in a forfeiture proceeding over that property, right? If there were evidence that that organizational association, the Lions Club or something. That was a long sentence. I'm not sure. Right. I mean, that would be a legitimate property interest, even though they're not incorporated. In some situations, maybe. In other situations, I wouldn't say so. But, you know, we're not talking about ten people who get together at the office and buy a Powerball ticket. You know, the question is, what's reasonable notice that the government can provide in a case like this? And, you know, we don't know who all of the members are of the outlaws nationwide. And that's the reason for this Internet notice. It's not. And I recognize the statute says, yeah, direct notice to people's permissive. I'm not very big on that concept. I don't know that it's fair. But in a case like this where you really don't know what's out there and there's no corporate structure, partnership structure, anything like that, this is what that Internet notice is for, to capture the people that you really can ascertain. So that's what we did in the case, and I think it's reasonable. And that's all amplified by the facts of the case here. It's hard to me to see how they can maintain this collective property theory when they're selling the property on the Internet. So if some other person buys this property on the Internet, is it still the collective property of the outlaws? And it's impossible to understand when this property is seized in this case from people who are not members of the outlaws. And we're not members of the outlaws, and they are associating some type of collective property interest in property that belongs to people who aren't even members of the outlaws. So that, to me, this entire collective property notion is a sham, and that's where the Rosca court came down as well. If I may move briefly to the issue of standing, the question of what's the legal interest in this case has been sort of a moving target. In the initial pleadings that Mr. Carlson filed with the district court, he creates this collective property theory, and his membership in the gang gives him a possessory interest in the property. Nothing said at all about bailment or agency. The initial brief that opposing counsel files cites numerous cases dealing with bailment and agency, and in his reply brief, he seems to steer toward agency. But the agency relationship that he talks about is the agency relationship, if it exists, between the outlaws and Mr. Carlson. He doesn't get into the interest, the relationship between Mr. Carlson and the folks on the street of Indianapolis who are getting their property seized. He doesn't say if Carlson has an interest in their property because it's a bailment or an agency relationship. So what it seems to me that it comes back to is this collective property notion, and I think that's not recognized under Indiana law. I see my time's up. Okay. Thank you very much.  Anything further, Mr. Rose? Thank you. Your Honor, I have to admit confusion as to what it means to ask whether an ownership is something that's actually recognized under state law. Ownership is ownership, and it's ownership whether you have a receipt for it. It's ownership whether you find it on the street. And it's undisputed on this record that these materials belong to the club and that the government at all times knew that they belonged to the club. Given this awareness, the only real issue in this case is whether it had information available to it to provide specific notice. We have suggested several mechanisms through which it could have done so. Mr. Coates and Solomon's denied discovery aimed at obtaining more information about their awareness. Quite frankly, it's strange credulity that the government's citation to the clubhouse in Florida underscores the fact that the government knew how to get a hold of the ad laws when it had its materials. Thank you. Thank you very much, counsel. The case is taken under advisement. Our final case.